**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

JAMESON CAMPBELL, individually and )
on behalf of all similarly situated persons, )    Civil Action No. 3:25-cv-00013-CDL
)
   Plaintiff, )
v. )    JURY TRIAL DEMANDED
)
UNITED TOWER COMPANY, LLC, )
)
   Defendant. )

**CONSENT MOTION TO APPROVE SETTLEMENT AND**
**RELEASE AGREEMENT AND DISMISS WITH PREJUDICE**

Plaintiff Jameson Campbell, individually and on behalf of all similarly situated persons ("Mr. Campbell" or "Plaintiff"), and opt-in Plaintiff Aaron Sidwell ("Mr. Sidwell") (together, "Plaintiffs") (Plaintiffs and Defendant hereinafter "the Parties") hereby file this Consent Motion to Approve Settlement and Release Agreement and Dismiss with Prejudice.  In support thereof, with Defendant's consent, Plaintiffs state as follows:

**I.    Summary of Proceedings**

Plaintiff commenced this suit on February 7, 2025.  He filed an Amended Complaint ("Complaint") on March 4, 2025.  The Complaint alleges a collective action for violations of the Fair Labor Standards Act ("FLSA") for unpaid overtime resulting from Defendant's payment of Tower Climbers like Mr. Campbell on a salaried, rather than hourly, basis.  *See* Doc. 9.  Mr. Sidwell joined on March 12, 2025.  *See* Doc. 10.  Before Defendant's Answer to the Complaint was due, the Parties jointly moved the Court for a stay of proceedings, which the Court granted beginning May 30, 2025.  *See* Doc. 15.

During the stay, following extensive data-collection efforts and analysis, the Parties successfully negotiated a collective settlement of the claims in the Complaint.  *See* Declaration of

Justin M. Scott ("Scott Decl.") at ¶¶ 10-13.  The Parties have also executed a Collective Action Settlement Agreement and Release (the "Agreement") that memorializes the terms of the collective FLSA settlement, a copy of which is attached hereto as Exhibit 1.  If the Court approves the agreed-upon settlement, the Agreement will resolve all claims Plaintiff has alleged in this action, and this dispute will therefore be appropriate for dismissal with prejudice, with the Court to retain jurisdiction to enforce the Agreement.

Among other things, the Agreement identifies the third-party administrator the Parties have agreed to retain to administer distribution of notice to all members of the putative collective, and outlines the procedure for doing so.  The Agreement also includes the Parties' proposed Notice of Settlement and Claims Procedure and the Parties' proposed Claim Form and Release as Exhibits A and B thereto, which provide clear, fair, and accurate notice of the claims, instructions on how to opt into the collective, and the effects of opting in or choosing not to.

The Parties agreed that Plaintiff would submit this Consent Motion for Approval to this Honorable Court requesting the Court's approval of the Agreement.

## II.    Argument and Citation of Authority

In this Circuit, for a release of FLSA claims to be enforceable, a Court must review and approve the agreement settling the alleged violations of the FLSA.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 702–14 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the Court).  "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353.  Accordingly, the Parties hereby submit a copy of the

Agreement for the Court's review and approval. A proposed Order approving the Agreement, authorizing the proposed notice, approving Plaintiffs' counsel's attorneys' fees, and dismissing this action is attached hereto as Exhibit 2.

### A.    Approval of Payments to Plaintiffs and Members of the FLSA Collective

To approve a settlement of overtime claims, a court must determine that the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355. There is a strong presumption in favor of finding a settlement fair. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources"). The Eleventh Circuit has detailed the circumstances justifying approval of an FLSA settlement as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food*, 679 F.2d at 1354. In determining whether the settlement is fair, adequate, and reasonable, courts sometimes examine the factors used in approving the settlement of class actions under Federal Rule of Civil Procedure 23:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See, e.g.*, *Wrenn v. Outback Care Grp. LLC*, 2022 WL 22888269, at *1 (M.D. Ga. Sept. 12, 2022); *Duren v. Int'l Follies, Inc.*, 2022 WL 3337249, at *1-2 (N.D. Ga. June 6, 2022); *Martinez v. Excel Hosp., LLC*, 2017 WL 9940234, at *2 (N.D. Ga. Jan. 27, 2017); *McDearis v. Last Resort Grill*, 2022 WL 868779, at *7 (M.D. Ga. Feb. 10, 2022), *report and recommendation adopted sub nom. McDearis v. Last Resort Grill, Inc.*, 2022 WL 855909 (M.D. Ga. Mar. 22, 2022).[1]

In this case, each of these factors shows that the terms of the Agreement are fair, adequate, and reasonable, and should be approved by the Court.

1.     The Absence of Collusion

During the stay, counsel for Defendant produced to counsel for Plaintiffs a damages assessment assuming Plaintiffs could succeed in proving FLSA liability in this case for the putative collective.  Scott Decl. at ¶ 10.  Defendant's counsel also produced available time and pay records for a select sample of the members of the putative collective so that Plaintiffs' counsel could check the damages assessment.  *Id.*  Plaintiffs shared their own contemporaneous records of hours worked.  *Id.* at ¶ 11.  This exchange of information allowed the Parties to focus their settlement negotiations on several key issues in dispute—namely, the number of each plaintiff's and potential plaintiff's workweeks with more than forty hours worked per week, the number of hours worked in excess of forty in each such week, potential obstacles to collective certification, and willfulness and defenses thereto.

The Parties began negotiating these issues before the Court stayed the case on May 30, 2025, and continued extensive negotiations in the months following.  Thus, the settlement in this

---

[1] The Parties note that concern for absent class members, which underlies the approval factors in a Rule 23 settlement, is less present in an FLSA settlement such as this one, where each potential plaintiff has the right to review and accept or reject the settlement agreement, and does not release their claims or join the settlement unless they opt in.

case is the ultimate result of arms-length negotiations by Parties who were well represented by counsel and made aware of all potential outcomes.

Under the terms of settlement (if approved), the twenty-nine (29) putative collective members, *id.* at ¶ 10, would share a total gross amount of $100,000.00 net of all settlement administrative costs and attorneys' fees and costs. The Agreement provides for attorneys' fees in the amount of 33% of the total settlement amount, as well as for a flat fee to third-party administrator Rust Consulting for the cost of administering distribution of notice and settlement payments to the putative collective members. Exhibit 1 at ¶¶ 66, 78.

Each plaintiff's distribution from the settlement fund will be calculated based on proportionate allocations of each plaintiff's actual damages, according to the number of workweeks in the covered period and their respective base rates of pay. *Id.* at ¶ 47. The eligible time frame for this case is February 7, 2022 through June 27, 2025. *Id.* at ¶ 15.

Defendant denies any liability under the FLSA and denies that Plaintiffs are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendant has agreed to make the settlement payments reflected in the Agreement.

In exchange for these settlement payments, Plaintiffs will provide Defendant with a tailored release covering wage and hour claims only which arose during the time period at issue in the case. *Id.* at ¶ 74. The Agreement does not have a general release of claims.

These facts establish that this settlement was reached by arms-length negotiations without collusion by or on behalf of any parties.

2.    <u>The Complexity, Expense, and Likely Duration of the Litigation</u>

The Agreement allows Plaintiffs to take a substantial recovery now, without suffering the delay and risk of litigating the claims. In this case, the passage of time and conflicting information in the Parties' contemporaneous records of putative collective members' hours worked mean that further litigation would require a significant amount of discovery, including both written discovery and numerous individual depositions, along with significant summary judgment briefing on the disputed legal issues in the case including willfulness and liquidated damages. Accounting further for the possibility of appeals, this litigation could drag on for years and require the expenditure of a tremendous amount of resources. Fees and costs in this case would only have continued to increase for both sides if the case had not settled.

3.    <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

This factor considers whether the parties have had the opportunity to fully evaluate the claims. *See Meyer v. Citizens and Southern Nat. Bank*, 677 F. Supp. 1196, 1209–10 (M.D. Ga. 1988); *Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 WL 3715446, *19 (N.D. Ala. 2004).

In this case, the Parties exchanged a substantial amount of informal discovery, including Defendant's production of all the time records available for the two current Plaintiffs and all such records for a representative sample of the other putative collective members' time records, in addition to a robust damages analysis. Scott Decl. at ¶¶ 10, 11. Given that the Parties have been able to reach an agreement before formal discovery began, the amount of information the Parties have exchanged is significant for this stage of the case. And because the Parties negotiated at arms-length based on a substantial data exchange, there is no risk here that the settlement amount is "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Foods*,

679 F.2d at 1354.  Rather, the Parties' detailed, tailored exchange of information pre-discovery has given them information sufficient to fully evaluate the issues primarily in dispute.

4.    The Probability of Plaintiffs' Success on the Merits.

Defendant denies that putative collective members' work hours were consistent enough to entitle them to mandatory overtime on a regular weekly basis.  Defendant also denies that it willfully violated the FLSA and has asserted the "good faith" defense to liquidated damages under 29 U.S.C. § 260.  Accordingly, disputes exist as to the amount of overtime worked, the calculation of overtime damages, and the availability of certain categories of relief.  Plaintiffs maintain that they regularly worked weeks as long as sixty hours, especially during Defendant's busy season, that Defendant willfully violated the FLSA by paying them overtime only under certain conditions as set forth in the Complaint, and that Defendant cannot satisfy the requirements of the "good faith" defense to liquidated damages under 29 U.S.C. § 260.  The Parties therefore disagree on the likelihood of Plaintiffs' success on the merits.

5.    The Range of Possible Recovery.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As summarized above, the Parties dispute the amount and kinds of damages to which Plaintiffs would be entitled if Defendant did not prevail on its defenses.  Defendant disputes that Plaintiff and putative collective members would be entitled to any damages in this action.  Under Plaintiffs' calculation methodology and contemporaneous records, Plaintiffs are entitled to recover

for an average of roughly ten hours of overtime per week, doubled for liquidated damages, for three years.

If Defendant prevailed in its defense, Plaintiffs would obviously receive no recovery. If Plaintiffs were to prevail, and Defendant's calculation methodology were to be used, and a two-year statute of limitations applied with liquidated damages and assuming putative collective members worked overtime on average, which Defendant disputes, then putative collective members' potential net recovery would be less than $40,000 in overtime back pay. Scott Decl. at ¶ 12. If Plaintiffs' calculation methodology is correct, and a three-year statute of limitations applies, the range of possible net recovery is as high as $255,000.00 in overtime back pay and liquidated damages. *Id.* The settlement payments to Plaintiffs of $100,000.00 less fees and costs provide a reasonable compromise of individually calculated overtime damages. Coupled with the fact that Plaintiffs are receiving substantial recovery now, instead of the prospect of potential recovery years in the future, this settlement is a good deal for Plaintiffs and those who choose to opt into the settlement.

6.    Counsels' Opinions.

Based on what the Parties learned through informal discovery, from witness interviews, and from extensive research and investigation, Plaintiffs' counsel believe the Parties negotiated a fair settlement for the Plaintiffs. By settling, Plaintiffs avoid: the risks of not establishing significant liability at trial; challenges to certification; substantial and indefinite delay in payment involved in having to wait for trial and any appeals; and potential adverse determinations on the liability and damages issues outlined above. Plaintiffs' counsel therefore recommends acceptance of this settlement and aver in their experienced opinions that the settlement is fair, beneficial, and equitably allocated among the settling Plaintiffs. Scott Decl. at ¶¶ 19, 20.

**B.    Approval of Payment of Attorneys' Fees**

The Agreement provides that Defendant shall pay Plaintiffs' attorneys' fees and costs in the amount of $33,333.00 out of the gross settlement fund.  *See* Exhibit 1 at ¶ 66.  For purposes of this motion, the $33,333.00 is allocated as $561.00 in costs and $32,772.00 in fees.  Scott Decl. at ¶ 21.  The Court should approve this payment of attorneys' fees and costs.

The FLSA requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiff, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).  The Supreme Court has held that a party is a "prevailing party" for purposes of awarding attorneys' fees if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989).  In the instant action, Plaintiffs stand to recover a favorable settlement payment of overtime hours.  Thus, Plaintiffs are entitled to payment of their attorneys' fees and costs in this action by Defendant in the amount stated in the Agreement.

The total requested attorneys' fees and costs is $33,333.00.  *See* Exhibit 1 at ¶ 66.  The requested fees and costs therefore represent 33% of the total settlement amount.  Plaintiffs' counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of 40% of any settlement, and Plaintiffs' counsel has agreed to the substantially lower percentage of 33%.  Scott Decl. at ¶ 24.  Because of this contingency fee arrangement, Plaintiffs' counsel has not received payment for any of their time litigating the case, nor have they received reimbursement for their out-of-pocket costs.  *Id.*  Regardless, Plaintiffs' counsel undertook the financial risk of potentially unsuccessful litigation, in an effort to recover overtime pay for

workers they believe were not paid for all hours worked.  *Id.* at ¶ 25.

Courts routinely approve similar contingency agreements in the amount of one-third, and it would be fair and reasonable to do so here as well.  *See, e.g.*, *Wreyford v. Citizens for Transp. Mobility, Inc.*, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014); (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (adopting the percentage-of-the-common fund approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (collecting cases and finding that attorneys' fees equivalent to 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%). Viewed under a common-fund analysis, therefore, Plaintiffs' fee request is eminently reasonable.

Plaintiffs are aware, however, of cases in this circuit scrutinizing FLSA settlements wherein attorneys' fees and payments to plaintiffs were negotiated "simultaneously."  *See, e.g.*, *Martin v. Huddle House, Inc.*, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011).  Plaintiffs note that *Martin* and the cases cited therein did not involve "common fund" collective action settlements, but rather simultaneous negotiation of payments to individual plaintiffs and separate payments to the attorneys.  *Martin* involved a settlement which netted the plaintiff's counsel $8,500 and only provided $6,500 in payments to the plaintiffs.  Likewise, cases citing *Martin* for the suggestion that fees should be negotiated separately from wages do not involve common-fund settlements of collective actions.  *See, e.g.*, *Marshall v. Good Vocations, Inc.*, 2013 WL 394389, at *1 (S.D. Ga. Jan. 31, 2013); *Barnes v. Ferrell Elec., Inc.*, 2013 WL 5651903, at *2 n.3 (S.D.

Ga. Oct. 16, 2013).  Plaintiffs therefore respectfully submit that it is entirely proper to settle an FLSA collective action for a common fund with attorneys' fees as a percentage of the common fund.  Here, the attorneys' fees were included in negotiations as a reasonable percentage of the overall common fund, and Plaintiffs' counsel agreed to a substantially lower percentage than the 40% to which counsel was contractually entitled.

Lead counsel for Plaintiffs has more than a decade of wage-and-hour experience, has litigated dozens of class and collective wage-and-hour actions in numerous courts across the country, and has regularly acted as lead counsel on FLSA collective actions in federal courts in Georgia.  Scott Decl. at ¶ 3.  This FLSA collective action exists because Plaintiffs' counsel discovered the alleged systemic violations in an individual employment case and Plaintiffs' counsel has diligently pursued relief on behalf of the FLSA collective since that time, including hours of reviewing and analyzing time and pay data as well as research regarding the collective claims and potential defenses to same.  *Id.* at ¶ 23.

Lastly, Plaintiffs note that the settlement agreement imposes substantial post-approval work on Plaintiffs' counsel.  Specifically, Plaintiffs' counsel is responsible for representing and answering any questions from putative collective members who opt in or have questions or concerns about doing so, counseling them regarding their rights in the settlement, and working with Defendant's counsel and the third-party administrator on any issues that arise during administration of the settlement.  *See* Exhibit 1 at ¶ 81.  Accordingly, if the Court is inclined to scrutinize Plaintiffs' fees for the purpose of reducing the claimed fee amount, Plaintiffs respectfully request that the Court reserve such analysis for after settlement administration, at which point Plaintiffs' counsel could, if the Court wishes, submit contemporaneous time entries with additional briefing.

11

## <u>CONCLUSION</u>

For the reasons set forth above and for good cause shown, the Parties respectfully request that this Court enter the Order attached hereto as Exhibit 2 approving the Agreement (attached hereto as Exhibit 1) by stipulated judgment.

Respectfully submitted, this September 22, 2025.

<div style="margin-left: 50%;">

*/s/ Jake Knanishu*
Justin M. Scott
Georgia Bar No. 557463
Jake Knanishu
Georgia Bar No. 597103
Radford Scott LLP
125 Clairemont Ave., Suite 380
Decatur, Georgia 30030
T: (404) 400-3600
jscott@radfordscott.com
jknanishu@radfordscott.com

*Counsel for Plaintiffs*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2025, I electronically filed the foregoing **CONSENT MOTION TO APPROVE SETTLEMENT AND RELEASE AGREEMENT AND DISMISS WITH PREJUDICE** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of all attorneys of record.

<div align="right">

*/s/ Jake Knanishu*
Counsel for Plaintiffs

</div>